**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **TRACI L. MACMANN, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| | **Case No.**  19-cv-404 |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **TROPICANA ENTERTAINMENT, INC., and TROPICANA ST. LOUIS, LLC D/B/A LUMIERE PLACE CASINO & HOTELS,** | |
| **Defendants.** | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Traci L. MacMann ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Defendants Tropicana Entertainment, Inc. ("Tropicana") and Tropicana St. Louis, LLC d/b/a Lumiere Place Casino & Hotels ("Lumiere") (collectively, "Defendants"), and hereby states and alleges as follows:

**INTRODUCTION**

1.      Plaintiff and all other similarly situated employees work or worked for Defendant Tropicana, a casino entertainment company.  Plaintiff worked at Defendant Lumiere, a casino owned and operated by Tropicana in St. Louis, Missouri.  Plaintiff was jointly employed by both Defendants Tropicana and Lumiere.

2.      Pursuant to their company-wide policies and procedures, Defendants failed to pay Plaintiff, and other similarly situated employees, the mandated federal and state minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek.

1

3.      First, Defendants' time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate their employees properly for all time worked, including overtime hours.  Second, Defendants failed to properly inform their tipped employees of the required tip credit provisions meaning that Defendants are not entitled to take a tip credit against their obligation to pay their employees minimum wage and must make up the difference between their direct sub-minimum wage and the applicable minimum wage.  Third, Defendants also miscalculated their employees' regular rate of pay for overtime purposes, resulting in unpaid overtime compensation.  Fourth, Defendants also made improper deductions primarily for Defendants' benefit from their employees' paychecks for gaming license fees and other deductions which reduced their employees' compensation below the required minimum wage and, in some situations, overtime rate under state and federal law for all hours worked.

4.      Defendants' systemic violations of federal and state wage laws were willful and made jointly by both Defendants.

5.      Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq.*, to recover unpaid minimum and overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendants; and (b) a Rule 23 class action under Missouri state law, including the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. § 290.500, *et seq.*, and Missouri common law.

## JURISDICTION AND VENUE

6.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Federal question jurisdiction over the FLSA

claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      Missouri law authorizes court actions by private parties to recover damages for violation of the MMWL's wage and hour provisions as well as common law breach of contract and unjust enrichment common law causes of action.  Supplemental jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367 and R.S.Mo. § 290.527, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

9.      Plaintiff is a resident St. Louis County, Missouri.  From approximately May 2011 through the present, Plaintiff has been employed by Defendants at Defendants' casino property located at 999 N. 2nd Street, St. Louis, Missouri 63102.  During her employment, Plaintiff worked as both a Table Games Dealer and Dual Rate Supervisor (both of which Defendants consider and treat as hourly, non-exempt positions).  Plaintiff's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as **Exhibit 1**.

10.     Defendant Tropicana is a corporation organized under the laws of the State of Delaware, with its principal place of business located in the State of Nevada.    Defendant Tropicana is registered to do business and does conduct business in the State of Missouri. Defendant Tropicana owns and operates Defendant Lumiere in the City of St. Louis, Missouri.

11.     Defendant Lumiere is a limited liability company organized under the laws of the State of Delaware.  Defendant Lumiere is registered to do business and does conduct business in the State of Missouri.  Defendant Lumiere operates in the City of St. Louis, Missouri.  Defendant Lumiere is owned, operated, and controlled by Defendant Tropicana.

12.     According to Defendant Tropicana's Form 10-K, filed on February 28, 2018, "We are an owner and operator of regional casino and entertainment properties located in the United States … Our United States properties include two casinos in Nevada and one casino in each of Indiana, Louisiana, Missouri, and New Jersey."

13.     In Defendant Tropicana's Form 10-K, filed on February 28, 2018, Exhibit 21.1 lists Defendant Lumiere as a subsidiary of Defendant Tropicana.

14.     At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

## DEFENDANT TROPICANA IS PLAINTIFF'S JOINT EMPLOYER

15.     Defendant Tropicana operates a hub and spoke employment structure whereby, Tropicana, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Defendant Lumiere.  By design, each individual casino is the acknowledged employer of the employees, like Plaintiff, who physically work at that casino property.  However, in reality, from its position at the operational center of this structure, Tropicana operates its casinos and instructs its subsidiary casinos on how and when to execute all manner of employment policies.  The subsidiary casinos, including Defendant Lumiere, must and do follow Tropicana's operational instructions.  Due to the pervasive control Tropicana has

exercised and continues to exercise over the employees at each of its casinos (both directly and indirectly), Tropicana is the joint employer of Plaintiff and all others similarly situated.

16.     There is no material difference between the manner in which Tropicana treats each of its subsidiary casinos or the employees who work at each subsidiary casino property. Each of the subsidiary casinos is akin to a regional office of Tropicana's nationwide gaming operation with Tropicana in control and directing the policies and procedures across the country.

17.     At all relevant times, Defendants were the employer and joint employer of Plaintiff, and all other similarly situated employees:

> a.     Defendants had the power to and exercised control over the hiring and firing of Plaintiff and all other similarly situated employees;
>
> b.     Defendants had the right to and did supervise and control the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;
>
> c.     Defendants determined the rate and method of payment for Plaintiff and all other similarly situated employees; and
>
> d.     Defendants maintained employment records for Plaintiff and all other similarly situated employees.

18.     At all times relevant to this action, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

19.     Plaintiff and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendants at their casino properties within the respective limitations periods.

## NATURE OF THE CLAIMS

### Unlawful Rounding Violations

20.     Plaintiff re-alleges the allegations set forth above.

21.     Defendants utilize a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work.

22.     Even though Defendants maintain a system which records, to the minute, the time an employee clocks in and clocks out, Defendants utilize a rounding system in computing payroll which rounds employees' time to the closest 15-minute interval.

23.     For example, an employee who clocks in between 7:53 a.m. and 8:07 a.m. will be treated by Defendants' payroll system as having clocked in at 8:00 a.m.

24.     Defendants utilize the same rounding system for clock outs.

25.     For example, an employee who clocks out between 5:08 p.m. and 5:22 p.m. will be treated by Defendants' payroll system as having clocked out at 5:15 p.m.

26.     Viewed in a vacuum, the rounding system utilized by Defendants appears to neither favor Defendants nor their employees as Defendants utilize the same rounding system when an employee clocks in or out.

27.     However, Defendants utilize an attendance and disciplinary policy to alter the seemingly neutral rounding system in a manner which transforms Defendants' rounding system into a system that is substantially rigged in Defendants' favor.

28.     Pursuant to Defendants' policies, Plaintiff and all similarly situated employees are required to clock in and commence work approximately 7 minutes before the start of their shift.

29.     Pursuant to Defendants' policies, Plaintiff and all similarly situated employees are subject to discipline if they clock in after the start of their shift.  Once they clock in, Plaintiff and

all similarly situated employees cannot spend the time prior to the start of their shift as they please and must proceed to their work station or go and do whatever is directed by Defendants.

30.     Pursuant to Defendants' policies, Plaintiff and all similarly situated employees may only clock out when authorized by their supervisor.

31.     As a result of Defendants' policies, Plaintiff and all similarly situated employees typically clock in and begin working 7 minutes prior to the start of their shift.

32.     As a result of Defendants' policies, Plaintiff and all similarly situated employees do not typically clock in after the start of their shift, because if they do, they are subject to discipline.

33.     Per Defendants' rounding system, none of the pre-shift work (up to 7 minutes per day) is paid as Defendants round this time to the next 15-minute interval, the employees' official start time.

34.     Accordingly, at the start of an employee's shift, Defendants' rounding system is rigged in favor of Defendants because Defendants utilize their attendance and disciplinary policies to ensure that, most of the time, the rounding which occurs at the start of the shift decreases the amount of compensable time Defendants pay their employees.

35.     Moreover, Plaintiff and all similarly situated employees, at the end of the day, are required to clock out no more than 7 minutes after the end of their shift.

36.     Plaintiff and all similarly situated employees do not typically leave work early; instead, they routinely leave work and clock out between the end of their shift and 7 minutes thereafter.  This makes sense because it is solely Defendants' decision as to when Plaintiff and all similarly situated employees are permitted to leave their work stations.  Because of this, Plaintiff and all similarly situated employees are unable to take advantage of the rounding system

7

because they cannot decide to leave prior to the conclusion of their shift.  As a result, Defendants' rounding system is rigged in favor of Defendants and against Plaintiff and all similarly situated employees.

37.     Accordingly, at the end of an employee's shift, Defendants' rounding system is rigged in favor of Defendants because the rounding which occurs at the end of their shift decreases the amount of compensable time Defendants pay their employees.

38.     In sum, Defendants' time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate their employees properly for all the time they have actually worked, including overtime wages.

39.     Defendants have no good faith basis to use such a rigged rounding system as their time clocks record the actual clock in and clock out times to at least a one-minute accuracy. Defendants have complete knowledge of all hours worked by Plaintiff and all similarly situated employees.

40.     Defendants' failure to pay this unpaid time has resulted in Plaintiff and all similarly situated employees being regularly denied proper compensation under the FLSA, the MMWL, and Missouri common law.

41.     Plaintiff and all similarly situated employees, in conformance with Defendants' clock-in and clock-out policies, and attendance and/or disciplinary policies, regularly clocked in and commenced work several minutes before the start of their shifts.

42.     Throughout Plaintiff's employment as a Table Games Dealer, she was paid a sub-minimum base wage for every hour worked.  Thus, during each workweek in which Defendants did not pay her for all hours worked due to their time-clock rounding policy, Plaintiff's regular rate of pay fell below the requisite federal minimum wage ($7.25/hour) and the requisite

Missouri state minimum wage.  Because the amount Plaintiff was paid during each of those workweeks divided by the number of hours she actually worked resulted in an amount less than the statutory requirement, Defendants violated the minimum wage requirements.

43.     During those workweeks and others, Defendants' time-clock rounding policy caused Plaintiff and all similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek).

### Entitlement to the Tip Credit – Failure to Give Notice

44.     An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees.  Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m)(2).

45.     The federal regulations expand on the language of the FLSA by explaining as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

46.     Defendants employ Plaintiff and other similarly situated tipped employees by paying a sub-minimum direct hourly wage but failed to properly notify them of the tip credit requirements of the FLSA.

47.     Specifically, Plaintiff and other similarly situated tipped employees are not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

48.     As Defendants have failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendants have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing.

**Miscalculated Regular Rate for Tipped Employees**

49.     Both the FLSA and MMWL require that employees receive overtime pay at a rate not less than one and one-half times the regular rate at which they are employed for all hours worked over 40 in a single workweek.

50.     Both the FLSA and MMWL permit an employer to take a "tip credit" toward its minimum wage obligations for tipped employees equal to the difference between the required cash wage (which must be at least $2.13 under federal law) and the applicable federal or state minimum wage.

51.     However, where the employer takes the tip credit, overtime is calculated on the full minimum wage, not the sub-minimum direct hourly wage payment.  The employer may not take a larger tip credit for an overtime hour than for a straight time hour.

52.     In addition, "where a higher minimum wage than that set in the [FLSA] is applicable to an employee by virtue of … other legislation, the regular rate of the employee … cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' … must be construed to mean the regular rate at which he is lawfully employed."  29 C.F.R. § 778.5.

53.     Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer … Any tips received by the employee in excess of the tip credit need not be included in the regular rate."  29 C.F.R. § 531.60.

54.     In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendants first subtracted the tip credit from the prevailing federal or state minimum wage.  In other words, Defendants calculated the overtime rate by multiplying one and one-half times the sub-minimum direct hourly wage being earned.  As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay.

55.     For example, on her paycheck dated November 9, 2017 (pay date), Defendants paid a direct hourly wage of $7.0425 per hour to Plaintiff.  During that pay period, Plaintiff received an overtime wage of $10.5637 per hour, for 5.00 hours of overtime worked.  In violation of the FLSA, Defendants calculated the overtime rate on the sub-minimum direct hourly wage payment, and not on the full minimum wage.  Defendants calculated the overtime rate by multiplying Plaintiff's subminimum direct hourly wage of $7.0425 by one and one-half

($10.5637).  Plaintiff's proper overtime rate should have been $10.875 per hour ($7.25[1] per hour times one and one-half) if Defendants were not entitled to utilize a tip credit, or $10.6675 per hour ($10.875 per hour minus a tip credit of $0.2075) if Defendants were entitled to utilize a tip credit.  Either way, Plaintiff's overtime pay was not based on the proper regular rate of pay.

56.     In doing so, Defendants failed to pay Plaintiff and all other similarly situated employees the proper overtime pay as required under both state and federal law.

**Improper Payroll Deductions from Employees' Paychecks**

57.     "The FLSA does not allow uniforms, or other items which are considered to be primarily for the benefit or convenience of the employer, to be included as wages. Thus, an employer may not take credit for such items in meeting his/her obligations toward paying the minimum wage or overtime."  U.S. Department of Labor, Wage and Hour Division, Fact Sheet #16, Deductions from Wages for Uniforms and Other Facilities Under the FLSA, https://www.dol.gov/whd/regs/compliance/whdfs16.pdf (last visited March 4, 2019).

58.     "Where deductions … reduce the employee's wages below the minimum wage, such deductions are illegal.  When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions …, because any such deduction would reduce the tipped employee's wages below the minimum wage."  U.S. Department of Labor, Wage and Hour Division, Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs15.pdf (last visited March 4, 2019).

---

[1] In 2017, the federally mandated minimum wage rate was set at $7.25/hour.

59.     Before an employee can work at Defendants' casino gaming operations, they must obtain an appropriate gaming license from the required state agency or commission.  The state agency or commission charges a fee for the initial gaming license, and a renewal fee.

60.     The gaming licenses are necessary for Defendants to generate revenue from their casino properties.  The casino properties cannot operate without employees, and the employees must have gaming licenses in order to work at the casinos.  As a result, these gaming license fees are primarily for the benefit of Defendants.

61.     Defendants make deductions from the wages of Plaintiff and all other similarly situated employees, to cover such costs for their gaming licenses required by the state gaming commission.  Defendants' deductions for such gaming licenses reduce Plaintiff's and all other similarly situated employees' wages below the minimum wage.

62.     For example, on her paycheck dated May 12, 2017 (pay date), Defendants paid a direct hourly wage of $6.9044 per hour to Plaintiff.  During that pay period, Defendants made a deduction to the wages of Plaintiff in the amount of $25.00 for "Game Lic/Wrk Prm." Defendants' deduction for the gaming license fee reduced Plaintiff's wages below the minimum wage.

63.     Because such deductions reduce Plaintiff and all other similarly situated employees' wages below the required minimum wage, Defendants' actions are a violation of both state and federal laws.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

64.     Plaintiff re-alleges the allegations set forth above.

65.     Plaintiff brings Count I, the FLSA claim arising out of Defendants' unlawful time-clock rounding policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

a.     **FLSA Time-Clock Rounding Collective:** All persons currently and formerly employed by Defendants in hourly positions who worked at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

66.     Plaintiff brings Count II, the FLSA claim arising out of Defendants' tip credit notification policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

a.     **FLSA Unlawful Tip Credit Collective:** All persons currently and formerly employed by Defendants in hourly positions paid a direct hourly wage that is below the applicable federal minimum wage rates who worked at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

67.     Plaintiff brings Count III, the FLSA claim arising out of Defendants' regular rate calculation policy resulting in unpaid overtime wages, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

a.     **FLSA Miscalculated Regular Rate Collective:** All persons currently and formerly employed by Defendants in hourly positions paid below the applicable federal minimum wage rates who worked at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

14

68.     Plaintiff brings Count IV, the FLSA claim arising out of Defendants' gaming license deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves individually and the following collective action class:

        a.      **FLSA Gaming License Deduction Policy Collective:** All persons currently or formerly employed by Defendants in hourly positions who had a deduction made from their payroll check for gaming licenses during a workweek which reduced their earnings below the required federal minimum wage, at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

69.     Plaintiff's FLSA claims (Counts I-IV) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

70.     Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

71.     Plaintiff brings Count V, the MMWL claim arising out of Defendants' unlawful time-clock rounding policy, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

        a.      **MMWL Time-Clock Rounding Policy Class:** All persons currently and formerly employed by Defendants in hourly positions who worked at any time from two (2) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

72.     Plaintiff brings Count VI, the MMWL claim arising out of Defendants' unlawful tip credit notification policy, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

      a.      **MMWL Unlawful Tip Credit Class:** All persons currently and formerly employed by Defendants in hourly positions paid a direct hourly wage that is below the applicable state minimum wage rates who worked at any time from two (2) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

73.     Plaintiff brings Count VII, the MMWL claim arising out of Defendants' regular rate calculation policy resulting in unpaid overtime wages, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

      a.      **MMWL Miscalculated Regular Rate Class:** All persons currently and formerly employed by Defendants in hourly positions paid below the applicable federal minimum wage rates who worked at any time from two (2) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

74.     Plaintiff brings Count VIII, the MMWL claim arising out of Defendants' gaming license deduction policy, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

      a.      **MMWL Gaming License Deduction Policy Class:** All persons currently or formerly employed by Defendants in hourly positions who had a deduction made from their payroll check for gaming licenses during a workweek which reduced their earnings below the required state

16

minimum wage, at any time from two (2) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

75.    Plaintiff brings Count IX, the Missouri common law breach of contract claim, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

a.    **Missouri Common Law Breach of Contract Class:**  All persons currently or formerly employed by Defendants in hourly positions at any time from five (5) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

76.    Plaintiff brings Count X, the unjust enrichment/quantum meruit claim, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

a.    **Missouri Unjust Enrichment / Quantum Meruit Class:** All persons currently and formerly employed by Defendants in hourly positions who worked at any time from five (5) years prior to the filing of the initial Class and Collective Action Complaint to the present within the State of Missouri.

77.    Plaintiff's MMWL claims (Count V-VIII), breach of contract claim (Count IX), and unjust enrichment/quantum meruit claim (Count X), described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

78.    These classes each number in the hundreds of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

17

79.     There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

        a.      Whether Defendants violated the FLSA and MMWL when they failed to pay Plaintiff and class members for all hours worked;

        b.      Whether Defendants had policies and practices of failing to compensate Plaintiff and class members for all time worked through the use of a timeclock rounding system;

        c.      Whether Defendants failed to pay Plaintiff and class members overtime compensation required under the FLSA and MMWL;

        d.      Whether the gaming license fees are primarily for Defendants' benefit and therefore unlawful;

        e.      Whether Defendants gaming license deductions reduced Plaintiff's and class members' wages below the applicable state or federal minimum wage rate;

        f.      Whether Defendants breached their contracts with Plaintiff and class members;

        g.      Whether Defendants were unjustly enriched by virtue of their policies and practices with respect to Plaintiff's and class members' pay;

        h.      Whether Defendants failed to properly inform their hourly employees being paid sub-minimum wage rates of the requirements for the tip credit; and

        i.      Whether Defendants willfully violated the FLSA and MMWL.

80.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

81.     Plaintiff's claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

82.     A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims.  Defendants have acted or refused to act on grounds generally applicable to the classes.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

83.     Plaintiff is an adequate representative because she is a member of each of the classes she seeks to represent, and her interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiff and her undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

84.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result

in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## ALLEGATIONS APPLICABLE TO ALL FLSA CLAIMS (COUNTS I-IV)

85.     At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

86.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

87.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

88.     During all relevant times to this action, Defendants were the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

89.     During all times relevant to this action, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

90.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

91.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

92.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

93.     Plaintiff and all similarly situated employees are victims of uniform and nationwide compensation policies.  Upon information and belief, Defendants are applying the same unlawful compensation policies to all similarly situated employees in their casino properties nationwide.

94.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

95.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

21

96.     As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.   Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

### **ALLEGATIONS APPLICABLE TO ALL MMWL CLAIMS (COUNTS V-VIII)**

97.     At all times relevant, Plaintiff and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. § 290.500 *et seq*.

98.     The MMWL regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law.   R.S.Mo. §§ 290.500(3) & (4); R.S.Mo. § 290.505.1.

99.     The MMWL should be construed in accordance with its provisions and those of the FLSA.   Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of the MMWL follows the FLSA and its companion regulations.   *See* 8 C.S.R. § 30-4.010(1).

100.     During all times relevant to this action, Defendants were the "employers" of Plaintiff and the class members within the meaning of the MMWL.   R.S.Mo. §§ 290.500(3), (4).

101.     During all times relevant to this action, Plaintiff and the class members were Defendants' "employees" within the meaning of the MMWL.   R.S.Mo. §§ 290.500(3).

102.    Plaintiff and the class members are covered, non-exempt employees within the meaning of the MMWL.  Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek.  R.S.Mo. § 290.502.1.

103.    Pursuant to the MMWL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  R.S.Mo. § 290.505.1.

104.    Although the MMWL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here.  R.S.Mo. § 290.500(3).

105.    Plaintiff and the class members are victims of uniform and employer-based compensation policies.  Upon information and belief, Defendants are applying the same unlawful compensation policies to Plaintiff and the class members in their casino properties in the State of Missouri.

106.    Plaintiff and the Class are entitled to damages equal to all unpaid regular and overtime wages due within two (2) years preceding the filing of this Class and Collective Action Complaint, plus periods of equitable tolling, along with an additional equal amount as liquidated damages, less any amount actually paid to the employees by Defendants.  R.S.Mo. § 290.527.

107.    Plaintiff and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

108.    Defendants are also liable to Plaintiff and the Class for costs and reasonable attorney fees incurred in this action.  R.S.Mo. § 290.527.

### COUNT I - FLSA (Unpaid Overtime & Minimum Wages)
### Arising Out of Defendants' Unlawful Time-Clock Rounding Policy

**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

109.    Plaintiff re-alleges the allegations set forth above.

110.    Defendants violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

111.    Specifically, as discussed above, Defendants utilize an unlawful time-clock rounding policy that, when combined with their attendance and disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

112.    Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

113.    WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

    a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

    b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

    c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT II - FLSA (Unpaid Minimum Wages)**

**Arising Out of Defendants' Tip Credit Notification Policy**

**(Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)**

114.   Plaintiff re-alleges the allegations set forth above.

115.   Defendants violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

116.   Specifically, Defendants paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

117.   In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

118.    Defendants failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations.  29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

119.    As Defendants have failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendants have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

120.    Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA.

121.    WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

26

f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT III - FLSA (Unpaid Overtime)

**Arising Out of Defendants' Regular Rate Calculation Policy**

**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

122.    Plaintiff re-alleges the allegations set forth above.

123.    Defendants violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

124.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay.  The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

125.    Federal regulations provide that "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer … Any tips received by the employee in excess of the tip credit need not be included in the regular rate."  29 C.F.R. § 531.60.

126.    In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendants first subtracted the tip credit from the prevailing federal or state minimum wage.  In other words, Defendants calculated the overtime rate by multiplying one and one-half times the lower direct (or cash) wage being earned.  As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA.

127.    WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

       a.     Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

       b.     Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

       c.     Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

       d.     Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

       e.     Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

       f.     Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT IV - FLSA (Unpaid Overtime & Minimum Wages)

**Arising Out of Defendants' Gaming License Fee Deduction Policy**

**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

128.    Plaintiff re-alleges the allegations set forth above.

129.    Defendants violated the FLSA by making deductions from the wages of Plaintiff and other similarly situated employees for gaming license fees, which reduced their wages below the federally required minimum wage and caused them to be underpaid overtime wages.  These deductions were primarily for the benefit of Defendants and, therefore, cannot constitute a credit

toward Defendants' obligation to pay Plaintiff and other similarly situated employees minimum wage.  As a result, Plaintiff and all similarly situated employees were paid below the federal minimum wage during the workweeks in which these deductions were made.

130.    Defendants' practice was unlawful and a willful failure to comply with the requirements the FLSA.

131.    WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

     a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

     b.    Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

     c.    Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

     d.    Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

     e.    Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

     f.    Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT V – MMWL (Unpaid Overtime & Minimum Wages)

### Arising Out of Defendants' Unlawful Time-Clock Rounding Policy

### (Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)

132.    Plaintiff re-alleges the allegations as set forth above.

133.    Defendants violated the MMWL by failing to pay Plaintiff and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

134.    Specifically, as discussed above, Defendants utilize an unlawful time-clock rounding policy that, when combined with their attendance and/or disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

135.    Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.  These policies resulted in Defendants failing to pay Plaintiff and all other similarly situated employees all earned overtime wages.  In addition, these policies resulted in Defendants failing to pay Plaintiff and all other similarly situated employees minimum wages for all hours worked.

136.    WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendants and pray this Court:

a.    Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiff and the Class damages for unpaid minimum wages and unpaid overtime wages under R.S.Mo. § 290.527;

c.    Award Plaintiff and the Class liquidated damages under R.S.Mo. § 290.527;

d.    Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

30

e.　　　Award Plaintiff and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.　　　Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT VI – MMWL (Unpaid Minimum Wages)**

**Arising Out of Defendants' Tip Credit Notification Policy**

**(Brought Against Defendants by Plaintiff Individually
and on Behalf of All Others Similarly Situated)**

137.　　Plaintiff re-alleges the allegations as set forth above.

138.　　Defendants violated the MMWL by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

139.　　Specifically, Defendants paid Plaintiff and all others similarly situated below the state minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

140.　　In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

141.    Defendants failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations, which are controlling within the context of the MMWL.  29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b); 8 C.S.R. § 30-4.010.

142.    As Defendants have failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendants have willfully violated state law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

143.    Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the MMWL.

144.    WHEREFORE, on Count VI of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendants and pray this Court:

        a.    Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

        b.    Award Plaintiff and the Class damages for unpaid minimum wages and unpaid overtime wages under R.S.Mo. § 290.527;

        c.    Award Plaintiff and the Class liquidated damages under R.S.Mo. § 290.527;

        d.    Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

        e.    Award Plaintiff and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.   Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT VII – MMWL (Unpaid Overtime & Minimum Wages)

### Arising Out of Defendants' Regular Rate Calculation Policy

### (Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)

145.   Plaintiff re-alleges the allegations as set forth above.

146.   Defendants violated the MMWL by failing to pay Plaintiff and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of 40 hours in a workweek.

147.   Specifically, the MMWL requires that employees are paid one and one-half times their "regular rate" of pay.   The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

148.   In calculating Plaintiff's and other similarly situated employees' overtime pay, Defendants first subtracted the tip credit from the prevailing federal or state minimum wage.   In other words, Defendants calculated the overtime rate by multiplying one and one-half times the sub-minimum direct hourly wage being earned.   As a result, Plaintiff's and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the MMWL.

149.   WHEREFORE, on Count VII of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

a.      Certify the state law claim set forth in Count VII above as a class action pursuant to Fed. R. Civ. P. 23;

b.      Award Plaintiff and the Class damages for unpaid overtime wages under R.S.Mo. § 290.527;

c.      Award Plaintiff and the Class liquidated damages under R.S.Mo. § 290.527;

d.      Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law;

e.      Award Plaintiff and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.      Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT VIII – MMWL (Unpaid Overtime & Minimum Wages)**

**Arising Out of Defendants' Gaming License Fee Deduction Policy**

**(Brought Against Defendants by Plaintiff Individually
and on Behalf of All Others Similarly Situated)**

150.    Plaintiff re-alleges the allegations as set forth above.

151.    Defendants violated the MMWL by making deductions from the wages of Plaintiff and other similarly situated employees for gaming license fees, which reduced their wages below the state required minimum wage and caused them to be underpaid overtime wages. These deductions were primarily for the benefit of Defendants and, therefore, cannot constitute a credit toward Defendants' obligation to pay Plaintiff and other similarly situated employees minimum wage.  As a result, Plaintiff and all similarly situated employees were paid below the state minimum wage during the workweeks in which these deductions were made.

34

152.     Defendants' practice was unlawful and a willful failure to comply with the requirements the MMWL.

153.     WHEREFORE, on Count VIII of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

a.     Certify the state law claim set forth in Count VIII above as a class action pursuant to Fed. R. Civ. P. 23;

b.     Award Plaintiff and the Class damages for unpaid minimum wages and unpaid overtime wages under R.S.Mo. § 290.527;

c.     Award Plaintiff and the Class liquidated damages under R.S.Mo. § 290.527;

d.     Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

e.     Award Plaintiff and the Class' counsel attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.     Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT IX

### Unjust Enrichment / Quantum Meruit Under Missouri Common Law

### (Brought Against Defendants by Plaintiff Individually and on Behalf of All Others Similarly Situated)

154.     Plaintiff re-alleges the allegations set forth above.

155.     Defendants benefited from the unpaid work performed by Plaintiff and the Class prior to the start of their shifts and after their shifts.   Additionally, Defendants benefited by

failing to pay their employees at the legal and applicable wage rates set by state and/or federal law, thereby failing to pay all minimum wages and overtime wages in compliance with the law.

156.    Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

157.    Defendants' acceptance and retention of the benefit of Plaintiff and the Class's unpaid labor was inequitable and resulted in Defendants being unjustly enriched.

158.    WHEREFORE, on Count IX of this Class and Collective Action Complaint, Plaintiff and the class members demand judgment against Defendants and pray this Court:

        a.      Certify the state law claim set forth in Count IX above as a class action pursuant to Fed. R. Civ. P. 23;

        b.      Order Defendants to disgorge the value of their ill-gained benefits to Plaintiff and the Class;

        c.      Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and

        d.      Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## COUNT X

**Breach of Contract Under Missouri Common Law**

**(Brought Against Defendants by Plaintiff Individually and
on Behalf of All Others Similarly Situated)**

159.    Plaintiff re-alleges the allegations set forth above.

160.    Defendants entered into a contract with Plaintiff and all similarly situated employees through which it agreed that employees would get paid an agreed-upon hourly rate for every hour worked during their employment.

161.    Defendants breached this contract by failing to pay Plaintiff and all others similarly situated their agreed-upon hourly rate for every hour worked during their employment.

162.    Specifically, Defendants reduced the amount of time worked by employees due to its rounding policy; Defendants miscalculated the proper overtime rate; and Defendants made deductions from wages for gaming license fees; all of which is not permitted by the contract.

163.    Because of Defendants' breach, Plaintiff and the Class have been damaged.

164.    WHEREFORE, on Count X of this Class and Collective Action Complaint, Plaintiff and the Class demand judgment against Defendants and pray this Court:

> a.    Certify the state law claim set forth in Count X above as a class action pursuant to Fed. R. Civ. P. 23;
>
> b.    Order Defendants to pay Plaintiff and the Class for the improperly withheld wages in violation of their contract;
>
> c.    Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law; and
>
> d.    Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated:  March 4, 2019                    Respectfully submitted,

                                         **STUEVE SIEGEL HANSON LLP**

                                         By:     */s/ George A. Hanson*
                                                 George A. Hanson, EDMO Bar #39538
                                                 Alexander T. Ricke, EDMO Bar #65132
                                                 460 Nichols Road, Suite 200
                                                 Kansas City, Missouri 64112
                                                 Telephone:     (816) 714-7100
                                                 Facsimile:     (816) 714-7101
                                                 hanson@stuevesiegel.com
                                                 ricke@stuevesiegel.com

                                         and

                                         **McCLELLAND LAW FIRM**
                                         *A Professional Corporation*

                                                 Ryan L. McClelland, MO Bar #59343
                                                 *Pro hac vice* application forthcoming
                                                 Michael J. Rahmberg, MO Bar #66979
                                                 *Pro hac vice* application forthcoming
                                                 The Flagship Building
                                                 200 Westwoods Drive
                                                 Liberty, Missouri   64068-1170
                                                 Telephone:     (816) 781-0002
                                                 Facsimile:     (816) 781-1984
                                                 ryan@mcclellandlawfirm.com
                                                 mrahmberg@mcclellandlawfirm.com

                                         **ATTORNEYS FOR PLAINTIFF**