UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRACI L. MACMANN, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19 CV 404 RWS |
| | ) | |
| TROPICANA ENTERTAINMENT, INC., and TROPICANA ST. LOUIS, LLC, D/B/A LUMIERE PLACE CASINO & HOTELS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This case is before me on Plaintiff's motion for conditional and class

certification, ECF No. [80]. Plaintiff seeks to certify four Fair Labor Standards Act

(FLSA) collectives and three classes under Fed. R. Civ. P. 23. Defendant opposes

certification. For the reasons discussed below, I will grant in part and deny in part

Plaintiff's motion.

I. BACKGROUND

Plaintiff, Traci MacMann, is a former employee of Tropicana St. Louis

(d/b/a Lumiere). She worked as a table games dealer and is bringing this action

alleging violations of the FLSA and Missouri Minimum Wage Law (MMWL) on

behalf of herself and those similarly situated. This case was originally brought

against Tropicana Entertainment Inc. and Tropicana St. Louis, but the national defendant was dismissed on August 6, 2020.

The Plaintiff claims that Lumiere violated federal and state minimum wage laws by failing to properly notify her and similarly situated employees about its use of a tip credit, incorrectly calculating their overtime rates, requiring them to pay for their own Missouri gaming license, and inappropriately rounding their time. She filed this action on behalf of herself and other similarly situated employees on March 3, 2019. The parties then conducted limited discovery on conditional and class certification issues.  Plaintiff filed her motion for class and conditional certification on September 25, 2020, which was fully briefed in early November. A hearing was then  held over the course of two days, November 24, 2020, and December 14, 2020. The parties provided additional briefing after the hearing, with the final briefs filed on February 3, 2021.

II. FAIR LABOR STANDARD ACT

A.  *Standard for Conditional Certification*

Under the Fair Labor Standards Act, any one or more employees for and on behalf of themselves and other employees similarly situated may maintain an action for violations of the minimum wage, overtime, and tip credit provisions of the Act.  29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated." Although the Eighth Circuit Court of Appeals has not decided on a

2

standard to use to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b), the district courts in this circuit have adopted a two-step analysis. See e.g., Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010).

Under the two-step process, plaintiffs first seek conditional certification, and if granted, the defendant may later move for decertification after the opt-in period has closed and all discovery is complete. See Id.; Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). The motion for conditional certification is usually filed before any significant discovery has taken place. Plaintiffs' burden at this first stage is typically not onerous. Davis, 408 F. Supp. 2d at 815. Conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Id. "Plaintiffs need not show that members of the conditionally certified class are actually similarly situated." Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 2007).

However, in cases such as this, where substantial discovery has already taken place, an "intermediate" standard of review is appropriate. It is not exactly clear what the standard looks like, leading one court to note that "the intermediate standard is applied differently by every court." McClean v. Health Sys., Inc., No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *4 (W.D. Mo. Dec. 12,

3

2011) (citing <u>Creely v. HCR ManorCare, Inc.</u>, 789 F. Supp. 2d 819, 826–28 (N.D. Ohio 2011)). Some courts use the more stringent second-step decertification factors, others require "modest factual support," while others fail to articulate an alternative at all. <u>Id.</u> (citing <u>Thiessen v. Gen. Elec. Cap. Corp.</u>, 996 F. Supp. 1071, 1080–81 (D. Kan. 1998)*;* <u>Olivo v. GMAC Mortg. Corp.</u>, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) n. 1 (E.D.Mich.2004); <u>Davis v. Charoen Pokphand (USA), Inc.</u>, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004)). In this district, when applying the intermediate standard, Courts have adopted the standard from <u>McLean</u> and <u>Creely</u>, which states:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs have made a sufficient modest "plus" factual showing…this Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to made it more likely that a class of similarly situated employees exists.

<u>Kayser v. Sw. Bell Tel. Co.</u>, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012) (quoting <u>McClean</u>, 2011 WL 6153091 at *5 (citing <u>Creely</u>, 789 F. Supp. 2d at 826–27).

*B. Tip Credit Notice Collective*

Plaintiff claims Defendant violated the FLSA by failing to provide proper notice to tipped employees regarding the tip credit Defendant claimed. She moves to certify a collective of "all hourly, non-exempt employees at Lumiere who were paid a direct hourly wage that was less than $7.25 per hour and for whom a tip

4

credit was claimed at any time from three years prior to the filing of the Complaint to the present."

To be considered "similarly situated," Plaintiff must show that the members of the collective were together the victims of a single decision, policy, or plan. Plaintiff contends that Defendant's response to interrogatories, which indicate that all employees are notified of the tip credit through various means, including but not limited to new-hire orientation, the employee handbook, department-specific meetings/documents and various posted notices, show that the members of the collective are similarly situated because they all received information regarding the tip credit in four uniform ways. Defendant argues that although it does uses new-hire orientation, the employee handbook, and departmental meetings and posters around the property to notify employees, these methods include both written and verbal notification, which varies depending on which individual within human resources or the department is conducting the training. Additionally, Defendant argues they communicate the tip credit information during the interview process.

Under the intermediate standard, I must compare the allegations made in plaintiffs' complaint with the evidence submitted after the limited discovery. McClean, 2011 WL 6153091, at *6. In her complaint, Plaintiff alleged that she and other similarly situated employees "are not informed in advance of Defendants' use of the tip credit, of (1) the additional amount by which the wages of the tipped

5

employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received by the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section." Compl at ¶ 117. In the depositions and testimony presented by the Plaintiff, she has presented further evidence corroborating these allegations with respect to table games dealers but has failed to show she is similarly situated to other tipped employees.

First Plaintiff cites to Lumiere's response to Interrogatory #2 and Lumiere's corporate representative deposition, which indicate that Defendant provides tip credit notice to tipped employees via a number of methods including the new hire orientation, the employee handbook, departmental-level orientations, and federal and state wage posters.  Plaintiff also provided copies of the Defendants new employee orientation training materials and the employee handbook, which do not include all of the necessary information to satisfy the tip credit notice requirement. This implies that Defendant relies on departmental meetings and other oral notification to satisfy its obligations under FLSA. While oral notification by different managers is insufficient to defeat conditional certification, the lack of any

uniform policy regarding notification requirements at departmental orientations makes certification of the class of all tipped employees inappropriate. <u>See</u> <u>Bouaphakeo v. Tyson Foods, Inc.</u>, 765 F.3d 791, 796 (8th Cir. 2014), <u>aff'd and</u> <u>remanded,</u> 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) (distinguishing case where there is a specific company policy from cases where there is not a specific policy and individual supervisors/managers are given discretion); <u>Comer v. Wal-Mart</u> <u>Stores, Inc.</u>, 454 F.3d 544, 546–47 (6th Cir. 2006). As indicated in the Defendant's corporate representative testimony, the training varies from department to department and there is no standard requirement for what information is included regarding the tip-credit.  While it is clear that the Defendant's lack of uniform tip-credit notice may have resulted in employees across the casino failing to receive adequate notice, the Plaintiff has not shown that she is similarly situated to employees in other departments since the information received at departmental orientation would not have been the same.

Finally, Defendant argues that Plaintiff is not similarly situated to union employees. They make this claim with respect to all of the FLSA collective actions, but I will address it here.  Defendant cites the fact that the collective bargaining agreement (CBA) outlines a mandatory grievance procedure for resolving any grievance, which is defined as a complaint about any working condition including but not limited to a violation, misinterpretation, or

7

misapplication of any provision of the agreement Defendant also argues that the CBA contains provisions relating to attendance and other wage an hour issues, which are not applicable to non-union employees. Although I agree with the Defendant that the agreement contains provisions related to attendance that may effect the time-clock rounding claim, I do not believe it contains any provisions that impact this claim, the gaming license claim, or the overtime rate claims. Additionally, courts have held that union and non-union members can be similarly situated and that union members can be part of an FLSA action when the dispute arises from the employer's obligations under the statute rather than from the collective bargaining agreement, as is the case here. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (holding that wage claims under the FLSA are not barred by the prior submission of their grievances to the contractual dispute-resolution procedures); Gani v. Guardian Serv. Indus. Inc., No. 10 CIV 4433 CM JCF, 2011 WL 167844, at *1 (S.D.N.Y. Jan. 13, 2011); Castillo v. P & R Enterprises, Inc., 517 F. Supp. 2d 440, 446–47 (D.D.C. 2007). Finally, the CBA at issue here focuses its grievance procedure and arbitration provisions on working conditions, not wages. For these reasons, I will conditionally certify the tip credit notice collective, but only with respect to table games dealers.

*C. Gaming License Deduction Collective*

Plaintiff also alleges that Defendant violated the FLSA by requiring minimum wage and subminimum wage employees to pay for their own Missouri Gaming Licenses. Plaintiff seeks to certify a collective consisting of "all hourly non-exempt employees at Lumiere who were paid a direct cash wage equal to or less than $7.25 per hour and had a gaming license fee deducted from their wages (or that they paid directly to the Missouri Gaming Commission) at any time from three years prior to the filing of the Complaint to the present."

Plaintiff argues that deducting the gaming license fee from employees pay reduces their pay below minimum wage in violation of FLSA. Defendant argues there is no uniform deduction policy because only individuals who authorize Lumiere to pay the gaming license fee on their behalf have the fee deducted from their pay.  But this argument misses the mark.  Plaintiff's claim is based on the Defendant's policy of having employees pay for their gaming licenses, not just Defendant's use of a payroll deduction. While the complaint was not perfectly clear on this issue, the Plaintiff's proposed class definition includes individuals who paid directly to the Missouri Gaming Commission. Additionally, Defendant does not challenge the Plaintiff's claim that they require employees to pay for their own gaming license. And the corporate representative testified in her deposition that employees are required to maintain a license and could lose their jobs if they

do not. Dep. of Carla Shelby, P. 30-31, ECF No. [80-3]. Since Defendant has not challenged the existence of the alleged policy and Plaintiff presented additional evidence beyond the allegations contained in the complaint, I will certify this collective.

*D. Miscalculated Regular Rate Collective*

Plaintiff seeks to certify a collective defined as "all hourly, non-exempt employees at Lumiere who were paid a direct hourly wage that was less than $7.25 per hour and worked more than 40 hours in any workweek from three years prior to the filing of the Complaint to present." Plaintiff alleges that Defendants incorrectly calculated tipped employees' overtime rate, resulting in under compensation.

Plaintiff argues that the class is similarly situated because a single formula was used to calculate the overtime rate for all tipped employees at Lumiere. Defendants argue that collective action is inappropriate because the Court would have to analyze each class member's pay stubs to determine whether such employees worked overtime and whether the rate for the overtime was properly compensated. While Defendant is correct that to adjudicate the claim, the Court would need to look at each individual's payment history, this analysis is only necessary to determine damages. See Judkins v. Southerncare, Inc., 74 F. Supp. 3d 1007, 1014 (S.D. Iowa 2015)(quoting Nerland v. Caribou Coffee Co., 564 F. Supp.

2d 1010, 1025 (D. Minn. 2007)). The Plaintiff claims that the same formula was used to calculate the overtime rate for all subminimum wage employees. She cites the deposition of Defendant's corporate representative, who indicated that overtime was calculated using the base rate, which excludes the tip credit. She also relies on the allegations in her complaint to support this claim.  Based on the facts presented liability would be determined solely by how the overtime rate is calculated, not individual inquiries into each employees' compensation. Accordingly, collective action is appropriate.  Since Plaintiff provided further evidence supporting the allegations in her complaint, I will conditionally certify this collective.

*E. Timeclock Rounding Collective*

Plaintiff also contends that Defendant's timeclock rounding system unlawfully deprives employees of pay. Plaintiff specifically alleges that the computerized time system used by the Defendant to track hours for payroll rounds employee clock-in and clock-out times to the nearest quarter hour. Plaintiff acknowledges that on its face the time-rounding system is neutral. However, Plaintiff further alleges that when combined with Defendants attendance policy, the rounding system substantially favors Defendants. Based on these allegations, Plaintiff seeks to certify a FLSA collective consisting of "all hourly, non-exempt employees at Lumiere who clocked out using the Kronos or ADP Timesaver

timekeeping software at any time from three years prior to the filing of the Complaint to the present."

Defendant argues that Plaintiff has failed to establish that she is similarly situated to the proposed collective because she has failed to show the attendance policy is uniformly enforced or that over a period of time the policy resulted in the systematic underpayment of employees.  Defendants also argue that Plaintiff has failed to demonstrate that all of the employees perform compensable work during the rounded minutes. Defendant's argument regarding enforcement of the attendance policy misses the mark. To deny further discovery at this stage because Defendant's management team may not uniformly enforce the Defendant's official policy would be inappropriate. "[D]ifferently-*applied* policies do not necessarily undermine plaintiffs' similarities."  See Kayser, 912 F. Supp. 2d at 813; See Also McClean, 2011 WL 6153091, at *7 (conditionally certifying a time rounding collective based on a time rounding system and policy prohibiting employees from clocking in more than seven minutes prior to their scheduled start time or seven minutes after their scheduled end time, noting that "at this point, Plaintiffs need not produce significant evidence of how the rounding operates in practice, [r]ather it is sufficient that they present evidence of a common policy or plan affecting the class of plaintiffs").   But Defendant's argument that Plaintiff failed to establish that members of the collective were doing compensable work during the rounded time

is well taken. Plaintiff did not provide any evidence about the types of activities most employees performed during the rounding periods. She did however provide evidence of the types of activities table games dealers performed. Finally, because the CBA has specific provisions addressing attendance that vary from Lumiere's standard policy, union employees and non-union employees are not similarly situated.  Accordingly, I will certify this class with respect to non-union table games dealers only.

## III. FEDERAL RULE OF CIVIL PROCEDURE 23

### A. Standard for Class Certification

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). Plaintiffs carry the burden of showing that they have met those requirements. See Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013). This burden is met only if, "after a rigorous analysis," the Court is convinced the Rule 23 requirements are satisfied. Comcast Corp. v. Behrend, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 341, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). Rigorous analysis may further "entail overlap with the merits of the plaintiff's underlying claim," because "[t]he class

determination generally involves considerations that are enmeshed in the factual

and legal issues comprising the plaintiff's cause of action." <u>Comcast Corp.</u>, 569

U.S. at 33–34 (internal quotation marks and citations omitted). However, the

Court's inquiry on a motion for class certification is "tentative," "preliminary," and

"limited." <u>In re Zurn Pex Plumbing Prod. Liab. Litig.</u>, 644 F.3d 604, 613 (8th Cir.

2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries

at the certification stage." <u>Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds</u>, 568

U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013). "Merits questions may

be considered to the extent—but only to the extent—that they are relevant to

determining whether the Rule 23 prerequisites for class certification are satisfied."

<u>Id.</u> "[The Court's] primary task is not to determine the final disposition of a

plaintiff's claims, but instead to examine whether those claims are appropriate for

class resolution." <u>Postawko v. Missouri Dep't of Corr.</u>, 910 F.3d 1030, 1037 (8th

Cir. 2018) (citing <u>In re Zurn Pex Plumbing Products Liability Litigation</u>, 644 F.3d

at 613).

     The numerosity requirement of Rule 23(a)(1) is satisfied if the members of a

class are so numerous as to make joinder impractical.  Rule 23(a)(2) requires that

there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Plaintiffs must show that their class claims "depend upon a common contention"

that "is capable of class wide resolution," such that "determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc., 564 U.S. at 350. But commonality " 'does not require that every question of law or fact be common to every member of the class...and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.' " Downing v. Goldman Phipps PLLC, No. 4:13CV206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting Paxton v. Union Nat. Bank, 688 F.2d 552, 561 (8th Cir. 1982)). "[A] single common question will do for purposes of Rule 23(a)(2)." Ebert v. Gen. Mills, Inc., 823 F.3d 472, 478 (8th Cir. 2016) (internal quotation marks and citation omitted). The key inquiry is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc., 564 U.S. at 350. The typicality requirement of Rule 23(a)(3) is satisfied if the named plaintiffs assert claims typical of the class. Typicality tends to merge with commonality, but the Eighth Circuit has given it independent meaning by requiring a "demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." Huskey v. Birch Telecom of Missouri, Inc., No. 4:17-CV-02415 JAR, 2018 WL 4679738, at *3 (E.D. Mo. Sept. 28, 2018) (citing Paxton, 688 F.2d at 562). This can be met when the claims of the members and representatives are based on the same legal or remedial theory. Id. Finally,

Rule 23(a)(4) requires that the named plaintiffs adequately protect the interests of the class. The adequacy factor serves "to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." Rattray v. Woodbury Cty., IA, 614 F.3d 831, 835 (8th Cir. 2010). Class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. Cromeans v. Morgan Keegan & Co., 303 F.R.D. 543, 553 (W.D. Mo. 2014). "The experience and capability of the representative's counsel bears upon the adequacy of the representative." Rattray, 614 F.3d at 836.

Rule 23(b)(3) requires that "common questions of law or fact predominate (predominance) and that the class action is the superior method for adjudication (superiority). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' " Tyson Foods, Inc., 136 S. Ct. at 1045. "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence." Halvorson v. Auto-Owners Ins. Co., 718 F.3d 773, 778 (8th Cir. 2013) (citing Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010)).

*B. MMWL Gaming License Deduction Class*

16

Plaintiff alleges that Defendant's Gaming License policy violates the
Missouri Minimum Wage Law and is seeking to certify the class of "all hourly,
non-exempt employees at Lumiere who were paid a direct hourly wage equal to or
less than the then-applicable minimum wage in Missouri and had a gaming license
feed deducted from their wages (or that they paid directly to the Missouri Gaming
Commission) at any time from two years prior to the filing of the Complaint to the
present."

Plaintiff argues that this class should be certified because it meets all of the
requirements under Fed. R. Civ. P.  23(a) and 23(b). Plaintiff states that the class
would have between 50-120 members, which satisfies the numerosity requirement.
Further, she argues that since only sub-minimum wage employees are included in
the class, the claims will all turn on a single legal question, whether the gaming
license primarily benefits the employer, which satisfies the commonality and
predominance requirements. Finally, she argues that since she suffered the same
harm as the class and the harm arose from a single policy, she is a typical member
of the class and could adequately represent it. Defendants on the other hand argue
that Plaintiff failed to establish that there is a predominate common question that
can be resolved through class wide proof because determination of liability will
require the Court to analyze each class member's compensation for pay periods in
which the deduction was made to see if their salary was reduced below minimum

wage.  Because of these individualized inquires, Defendants argue a class action is not the superior method of adjudication and Plaintiff is not an adequate representative of the class.

Although final determination of damages would require individual inquiries into plaintiffs' salaries when the gaming license fee was paid, it is not sufficient to overcome class certification. The class definition limits the class to individuals who were making a direct hourly minimum wage. Therefore, any deduction would reduce their salaries below minimum wage and no individual inquiry would be required to determine whether Defendants are liable, just the extent of damage. Kayser, 912 F. Supp. 2d at 812. Therefore, I will certify this class under Fed. R. Civ. P. 23.

### C. MMWL Miscalculated Regular Rate Class

Plaintiff alleges that Lumiere violated the MMWL by incorrectly calculating the overtime rate paid to her and similarly situated employees. She is seeking to certify the class of "all hourly, non-exempt employees at Lumiere who were paid a direct hourly wage that was less than the then-applicable minimum wage in Missouri ($9.45 per hour during 2020, $8.60 per hour during 2019, $7.85 per hour during 2018, and $7.70 per hour during 2017) and worked more than 40 hours in any work week from two years prior to the filing of the Complaint to the present."

Plaintiff argues that this class should be certified because it meets all of the
requirements under Fed. R. Civ. P.  23(a) and 23(b). Plaintiff states that the class
would have between 50-120 members, which satisfies the numerosity requirement.
Plaintiff also argues that since only sub-minimum wage employees who worked
more than forty hours per week at least once in the applicable time frame are
included in the class, the claims will all turn on a single question, whether the
overtime rate calculation correctly compensated employees.  This, Plaintiff argues
satisfies the commonality and predominance requirements. Finally, Plaintiff argues
that since Defendant calculates all overtime rates for subminimum wage
employees using the same formula, she suffered the same harm as the class, is a
typical member of the class, and could adequately represent it. Defendants on the
other hand argue that Plaintiff failed to establish that there is a predominate
common question that can be resolved through class wide proof because
determination of liability will require the Court to analyze each class member's
compensation for pay periods in which they worked overtime to determine if their
salary was reduced below minimum wage and by how much.  Because of these
individualized inquires, Defendants argue a class action is not the superior method
of adjudication and Plaintiff is not an adequate representative of the class.

    As discussed in the previous section, the need for individualized damages
inquiries does not defeat class certification. Defendant has not indicated that the

overtime rate calculations vary across departments or individuals, just that each individuals' records will have to be reviewed to determine if they worked overtime, the amount of time, and the rate used.  These issues go to damages. Therefore, I will certify this class.

*D. MMWL Timeclock Rounding Class*

Finally, Plaintiff alleges that Defendant's timeclock rounding system unlawfully deprives employees of pay under the MMWL. Based on her allegations, Plaintiff seeks to certify a FLSA collective consisting of "all hourly, non-exempt employees at Lumiere who clocked out using the Kronos or ADP Timesaver timekeeping software at any time from three years prior to the filing of the Complaint to the present."

Defendant argues that this class should not be certified under Fed. R. Civ. P. 23 because it does not meet the commonality, predominance, typicality, and adequacy requirements. First, Defendant argues that Plaintiff does not meet the commonality requirement because adjudication of the issues would require too many individualized inquires including whether individuals were disciplined for clocking in late or clocking out early, whether they had their time rounded in a manner that unfairly favored Defendant, and whether individuals performed compensable work during the rounded time. Defendant further argues that Plaintiff's broad class definition does not appropriately focus on whether the class

20

members have suffered the same alleged harm. See Bennett v. Hayes Robertson
Grp., Inc., 880 F. Supp. 2d 1270, 1280 (S.D. Fla. 2012) (denying class certification
where despite an unlawful written policy, plaintiffs failed to present evidence that
the alleged tip credit policy injured all class members in the same way and
generated common answer central to the viability of the claims if the case were to
proceed to trial). For the same reason, Defendant argues that Plaintiff's claims are
not typical of the class and she is not an adequate representative. Defendant also
argues that a class action is not the superior method of adjudication, pointing to its
discussion of the individualized inquires required to support this argument.

      Because of the higher standard under Fed. R. Civ. P. 23, I will not certify
this class. The MMWL Timeclock Rounding Class does not meet the
predominance requirement. Plaintiff would need to show that class members were
engaged in compensable work during the uncompensated time, which overwhelms
the common question of whether the rounding policy impermissibly favors
Defendant. Under the MMWL, which is interpreted in accordance with FLSA,
liability is predicated on failure to pay for compensable work. See Mo. Rev. Stat. §
290.505; See e.g. IBP, Inc. v. Alvarez, 546 U.S. 21, 25–28, 126 S. Ct. 514, 163 L.
Ed. 2d 288 (2005). Whether the activities completed during the rounded time are
compensable is therefore a critical part of the case. Therefore, it fails to meet the

higher standard necessary for certification under Fed. R. Civ. P. 23(a) and  I will deny Plaintiff's motion to certify this class.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for class and conditional certification, ECF No. [80], is **GRANTED** in part and **DENIED** in part as discussed in this Order.

**IT IS FURTHER ORDERED** that the parties shall file a joint proposed form of notice for the Court's consideration, consistent with this Order, within 28 days of the date of this Order. If the parties cannot agree on a joint proposed form of notice after good faith efforts, then the parties shall file their own proposed forms of notice, each with a brief memorandum setting out the areas of disagreement and support for their position, for the Court's consideration.

**IT IS FURTHER ORDERED** that Defendants must produce to Plaintiff, in a readable electronic data file, the names, dates of service, last known mailing addresses, email addresses and telephone numbers of all potential class members within 21 days of this Order.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March 2021.